**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Mar 12 2012, 9:27 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**CRAIG D. DOYLE**
**MARK R. GALLIHER**
Doyle Legal Corporation, P.C.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES:

**G. MARTIN COLE**
**JEREMY J. GROGG**
Burt, Blee, Dixon, Sutton & Bloom, LLP
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| WELLS FARGO BANK, N.A., successor in interest to The Money Store Investment Corporation, f/d/b/a First Union Small Business Capital, | ) ) ) ) ) | |
| Appellant, | ) ) | |
| vs. | ) ) | No. 02A04-1103-CP-112 |
| NEAL A. SUMMERS, et al., | ) ) | |
| Appellees. | ) | |

APPEAL FROM THE ALLEN CIRCUIT COURT
The Honorable Allen N. Wheat, Judge
Cause No. 02C01-0109-CP-1341

**March 12, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Wells Fargo Bank, N.A. ("Wells Fargo"), successor in interest to The Money Store Investment Corporation, f/d/b/a First Union Small Business Capital, appeals the court's denial of its motion to correct error. We find one issue dispositive, which is whether Wells Fargo's notice of appeal is untimely. We dismiss.

This is the third appeal in this case. The relevant facts as discussed by the Indiana Supreme Court in the first appeal follow.

> From 1992 to 1996, Neal Summers granted eleven mortgages on three parcels of his real estate to Fort Wayne National Bank as security for a series of loans. Three of these mortgages contained dragnet clauses.
>
> In February 1998, Paula Phillips sued Summers and the company in which he was the sole shareholder, Mangy Moose Enterprises, Inc. Her complaint raised a dispute over the ownership of the trademark/trade name "Paula's Seafood." The parties entered into a written settlement agreement on September 21, 1999, and the suit was subsequently dismissed without prejudice.
>
> On September 15, 2000, Summers and Mangy Moose borrowed $508,275 from the Money Store Investment Corporation d/b/a First Union Small Business Capital and granted a mortgage on the same three parcels used to secure the Fort Wayne National mortgages (to which National City succeeded), plus an additional six lots. On the same day, Mangy Moose, by Summers as president and secretary, borrowed $471,000 from Money Store, and granted a mortgage on the same real estate.
>
> Prior to these loans, on August 30, National City sent to Money Store's title company three pay-off statements that included the daily interest. National City assured the title company that eight mortgages and two assignments of rents and leases would be released upon the proper payoff of the three loans. On September 15, National City received three payments, but one payment came up $375 short of the amount reflected on the pay-off statements. National City did not release any of the mortgages and was still owed some $4700 on Mangy Moose's overdrawn checking account.
>
> Phillips filed a motion to enforce the settlement agreement on August 10, 2001. Just over a month later, Money Store filed a complaint for foreclosure and appointment of a receiver. On February 5, 2002, the

2

trial court in the Phillips' action found that Summers and Mangy Moose had failed to comply with an earlier order and granted Phillips a $205,700 judgment.

Phillips then purchased National City's nine mortgages and two assignments of rents and leases, and National City assigned all of its interest to Phillips. In March 2002, Phillips filed a complaint to foreclose these mortgages, and also moved to intervene in the Money Store foreclosure action. Both Phillips and Money Store moved for summary judgment.

The trial court entered its judgment and decree foreclosing both Phillips' and Money Store's mortgages. It held that "dragnet" clauses contained in three of the mortgages assigned to Phillips secured "all debts or obligations owed to Paula Phillips by Summers," which included Phillips' judgment lien against Summers, Mangy Moose's overdrawn checking account, collection fees, attorneys fees, and interest. It granted Phillips priority over Money Store on the three Summers' lots used as collateral in the mortgages assigned to Phillips.

The Court of Appeals affirmed, holding that "the mortgage dragnet clauses support[ ] the trial court's conclusion that the monetary judgment resulting from Summers' failure to comply with his written settlement agreement was, after Phillips acquired the mortgage through assignment by National City, 'secured by' the dragnet mortgages." The Money Store Inv. Corp. v. Summers, 822 N.E.2d 223, 229 (Ind. Ct. App. 2005) vacated. We granted transfer.

The Money Store Inv. Corp. v. Summers, 849 N.E.2d 544, 546-547 (Ind. 2006) (citations and footnote omitted).

The Court concluded as follows:

While it is true that Phillips stepped into the shoes of the mortgagee, this entitled her to collect debts secured in accordance with the terms of the mortgages, not her judgment lien. The debts in this case were limited to the $375 short payment on the loan payoff and the $4700 overdrawn checking account, plus interest, collection costs, and attorney's fees. We reverse the trial court's grant of priority to Phillips over Money Store on the lots in question.

Id. at 548.

3

After a second appeal, see The Money Store Inv. Corp. v. Summers, 909 N.E.2d 450, 456 (Ind. Ct. App. 2009), reh'g denied, Phillips filed a Petition for Attorney's Fees on Second Appeal on August 18, 2009. That same day, Phillips filed a Further Supplemental Petition for Recovery of Property Tax Payments and Insurance Payments on the Mortgaged Property. On September 18, 2009, Phillips filed her Final Petition for Recovery, Accounting for Rents and Profits. That same day, Phillips filed a Supplemental Affidavit of Legal Services with Regard to Post-Judgment Attorney Fees and Recovery of Property Tax Payments and Insurance Payments.

On August 13, 2010, Wells Fargo filed a trial brief. On August 24, 2010, Phillips filed a trial brief and Supplemental Affidavit of Legal Services with Regard to Post-Judgment Attorney Fees and Recovery of Property Tax Payments and Insurance Payments.

On October 14, 2010, the court entered judgment finding that Phillips had a first priority lien to be satisfied upon the real estate being sold at foreclosure sale effective August 31, 2010 in the amount of $443,727.09 and that Phillips recover her costs of the sale including but not limited to reasonable attorney fees and post-judgment interest accruing after August 31, 2010.

On November 12, 2010, Wells Fargo filed a motion to correct errors alleging that the court erred when it "treated the amount of Phillips' profits from 2005 through 2010 (totaling $183,843.75), as if it were a payment against Phillips' claim made on October 14, 2010," instead of "applying each year's profit to reduce Phillips' claim at the end of year, beginning December 31, 2005." Appellant's Appendix at 656.

4

On January 31, 2011, the court held a hearing on Wells Fargo's motion to correct error, and at the end of the hearing the court stated: "it would appear that counsel are willing to agree and stipulate as to the matter of an increase or a decrease in the overall judgment of this Court if the sale, at some point in time if the sale was to occur based upon the profits or loss of this business." Transcript at 309. That same day, the parties filed a stipulation which stated:

> The parties, by counsel, stipulate to providing a statement of account in the form of a profit/loss statement from August 1, 2010, through the month prior to Sheriff's Sale of the mortgage property to be prepared by the Accountant for Paula's on Main, LLC, Rex Harris C.P.A. Depending on whether the restaurant operations have generated a profit or suffered a loss, the [judgment] shall be reduced (in the amount of any profit) or increased (in the amount of any loss[)].

Appellant's Appendix at 673.

On February 8, 2011, the court ordered that the judgment of October 14, 2010, be amended to incorporate the stipulation of counsel and denied the remainder of Wells Fargo's motion to correct error. The court also ordered:

> The temporary stay of execution heretofore entered by the Court shall continue until February 22, 2011. If [Wells Fargo] should post bond in the sum of $100,000, then the temporary stay of execution shall be made permanent commencing on the date said bond is filed with the Clerk of the Allen Circuit Court pending exhaustion of all Appellate review of the Judgment entered by the Court.

Id. at 79. On March 2, 2011, Wells Fargo filed a notice of appeal of the October 14, 2010 order and the February 8, 2011 order denying in part the relief requested in Wells Fargo's motion to correct error. Id. at 674.

The issue is whether Wells Fargo's notice of appeal is untimely. Ind. Appellate Rule 9(A)(1) provides that "if any party files a timely motion to correct error, a Notice of

5

Appeal must be filed within thirty (30) days after . . . the motion is deemed denied under Trial Rule 53.3 . . . ." "Unless the Notice of Appeal is timely filed, the right to appeal shall be forfeited . . . ." Ind. Appellate Rule 9(A)(5).

Ind. Trial Rule 53.3(A) governs the time limitation for ruling on a motion to correct error and provides:

> In the event a court fails for forty-five (45) days to set a Motion to Correct Error for hearing, or fails to rule on a Motion to Correct Error within thirty (30) days after it was heard or forty-five (45) days after it was filed, if no hearing is required, the pending Motion to Correct Error shall be deemed denied. Any appeal shall be initiated by filing the notice of appeal under Appellate Rule 9(A) within thirty (30) days after the Motion to Correct Error is deemed denied.

The denial in Rule 53.3 is "automatic" and "self-activating upon the passage of the requisite number of days."[1] Wurster Const. Co., Inc. v. Essex Ins. Co., 918 N.E.2d 666, 671 (Ind. Ct. App. 2009) (quoting Trisler v. Exec. Builders, Inc., 647 N.E.2d 390, 393 (Ind. Ct. App. 1995), trans. denied).

The record reveals that the trial court entered an order on October 14, 2010. On November 12, 2010, Wells Fargo filed a motion to correct errors. Wells Fargo does not direct our attention to the record to demonstrate, and our review of the record does not indicate, that the January 31, 2011 hearing was scheduled prior to the date forty-five days after the filing of the motion to correct error. Accordingly, pursuant to Trial Rule 53.3,

---

[1] Ind. Trial Rule 53.3(C) was amended effective January 1, 2011, to provide: "For the purposes of Section (A) of this rule, a court is deemed to have set a motion for hearing on the date the setting is noted in the Chronological Case Summary, and to have ruled on the date the ruling is noted in the Chronological Case Summary." Prior to January 1, 2011, Ind. Trial Rule 53.3(C) provided: "Time of ruling. The time at which a court is deemed to have ruled shall be as set forth in Trial Rule 53.1(C)," and Ind. Trial Rule 53.1(C) provided: "For the purposes of Trial Rules 53.1, 53.2 and 53.3, a court will be deemed to have ruled or decided at the time the ruling or decision is entered into a public record of the court or at the time the ruling or decision is received in the office of the Clerk of the court for filing."

the motion to correct errors was deemed denied on December 27, 2010, which was forty-five days after it was filed on November 12, 2010. Consequently, the notice of appeal filed by Wells Fargo on March 2, 2011, was untimely, and Wells Fargo forfeited the right to appeal. See Ind. Appellate Rule 9(A)(5) ("Unless the Notice of Appeal is timely filed, the right to appeal shall be forfeited . . . ."); Ind. Trial Rule 53.3(A) ("Any appeal shall be initiated by filing the notice of appeal under Appellate Rule 9(A) within thirty (30) days after the Motion to Correct Error is deemed denied."). Accordingly, we dismiss Wells Fargo's appeal. See Cavinder Elevators, Inc. v. Hall, 726 N.E.2d 285, 289 (Ind. 2000) (holding that "if the plaintiff, as the party filing the motion to correct error, had failed to commence a timely appeal following the deemed denial pursuant to Trial Rule 53.3(A), such failure would have waived the claims and precluded the plaintiff from raising them as cross-errors on appeal"); Ostertag v. Ostertag, 755 N.E.2d 686, 687-688 (Ind. Ct. App. 2001) (observing that "[o]n this record, we have no means of determining whether the hearing was rescheduled within forty-five days," concluding that the appellant "failed to demonstrate that she timely filed her praecipe, and we cannot infer our own jurisdiction on such a slender record," and dismissing the appeal); see also Kovacik v. Kovacik, 631 N.E.2d 509, 511 (Ind. Ct. App. 1994) (holding that Ind. Trial Rule 53.3(A) "specifically requires a hearing to be set within forty-five (45) days . . . .").

For the foregoing reasons, we dismiss Well Fargo's appeal.

Dismissed.

BAKER, J., and KIRSCH, J., concur.